UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MUNSTER STEEL CO., INC., )
        )
    Plaintiff, )
        )
  vs. ) No. 2:16-CV-345
        )
CRANE 1 SERVICES, INC., )
        )
    Defendant. )

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss Count V of Plaintiff's Complaint, filed by the defendant, Crane 1 Services, Inc., on September 16, 2016. (DE #13.) For the reasons set forth below, the motion is **GRANTED**; however, Count V is dismissed **without prejudice**.

BACKGROUND

The plaintiff, Munster Steel Co., Inc. ("Munster Steel"), filed its complaint on July 26, 2016. (DE #1.) The complaint, which is premised upon diversity jurisdiction, lists the following claims against the defendant, Crane 1 Services, Inc. ("Crane 1"): Count I, Breach of Contract; Count II, Breach of Implied Warranty of Merchantability – I.C. 26-1-2-314; Count III, Breach of Implied Warranty of Fitness for a Particular Purpose – I.C. 26-1-2-315; Count IV, Negligence; Count V, Fraudulent Misrepresentation; and

Count VI, Negligent Misrepresentation. (*Id*.) Crane 1 filed the instant motion to dismiss on September 16, 2016, arguing that Count V of the complaint should be dismissed with prejudice because Munster Steel failed to plead fraud with the requisite particularity as required under the Federal Rules of Civil Procedure. (DE #13.) Crane 1 also filed an answer that same day. (DE #15.) Munster Steel filed a response to the motion to dismiss on September 30, 2016. (DE #16.) Crane 1 filed its reply on October 7, 2016. (DE #17.) The motion is ripe for adjudication.

DISCUSSION

*Relevant Facts*

Munster Steel is an Indiana corporation in the business of fabricating structural steel. (DE #1, p. 1.) As part of its operations, Munster Steel utilizes heavy duty cranes that must be able to withstand repetitive picks, speed requirements, and length of life or load requirements. (*Id*. at. 2.) When it sold its old facility in November of 2011 and ultimately moved to a new facility in August of 2014, Munster Steel sought to purchase "Class D" cranes specifically designed for heavy duty applications. (*Id*. at 2-3.) Munster Steel solicited a proposal from Crane 1, a Delaware corporation in the business of supplying and servicing cranes and hoists, to design, supply, and install heavy duty "Class

2

D" cranes at its new facility; in connection with the negotiation of the proposal, Crane 1 visited Munster Steel's old facility and took measurements and photographs of the existing cranes in order to ensure that the new cranes would be of like kind. (*Id.* at. 1, 3.) On March 19, 2013, Crane 1 submitted a proposal to Munster Steel in which it proposed to "furnish, install and provide all required start-up testing for each system referenced within this proposal" including cranes "designed to meet or exceed CMAA service class "D" requirements with each crane utilizing the same hoist to minimize required parts inventory and ease of maintenance" (the "Proposal"). (*Id.* at 3-4; see also DE #1-1.) The Proposal "articulated the details of how the cranes would be designed and constructed." (DE #1, p. 20.) Crane 1 "knowingly represented that the cranes would meet all the specifications and standards identified in the Proposal." (*Id.*) On October 1, 2013, Munster Steel accepted the Proposal and signed a purchase order in the amount of $1,290,000.00 for the equipment detailed in the Proposal (the "Purchase Order"); because the Purchase Order incorporated the terms and specifications of the Proposal, the two documents formed the basis of the agreement between Munster Steel and Crane 1 (collectively, the "Agreement"). (*Id.* at 4; see also DE #1-2.) At the time the Agreement was formed, Crane 1 "knew Munster Steel would rely upon the representations made . . . regarding the manner

in which the cranes were to be designed, constructed and installed." (DE #1, p. 20.) Munster Steel relied on the representations made by Crane 1 when it entered into the Agreement and ultimately paid Crane 1 in full for the equipment and service provided. (*Id.* at 22.) However, Munster Steel alleges that Crane 1 "knowingly and intentionally designed and constructed the cranes in a manner that failed to meet the requirements" of the Agreement. (*Id.*) Specifically, the cranes delivered to Munster Steel were not "Class D" and Crane 1 failed to fabricate and construct them in a workmanlike manner. (*Id.* at 4-15.) Additionally, Crane 1 failed to provide as-built drawings or other documentation related to the crane specifications, despite the fact that it had represented that it would do so. (*Id.* at 4-15, 20-21.)

Because the cranes were not in accordance with the specifications of the Agreement, Munster Steel has been "unable to fully utilize the cranes to perform its structural steel fabrication and has lost significant revenue as a result." (*Id.* at 15.) Munster Steel also incurred costs to investigate the deficiencies. (*Id.* at 22.) As of the date the complaint was filed, Crane 1 has "failed to take full responsibility and refuses to replace the defective equipment or complete all repair work." (*Id.* at 15.)

*Standard*

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations other than fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" that the pleader is entitled to relief. However, fraud and constructive fraud claims are subject to heightened pleading standards; under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *Cincinnati Life Ins. Co. v. Grottenhuis*, No. 2:10-cv-00205-LJM-WGH, 2011 WL 1107114, at *8 (S.D. Ind. Mar. 23, 2011) (it is "undisputed that the constructive and actual fraud claims are subject to heightened Rule 9(b) pleading standards.").

In order to survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts must be accepted as true, and all reasonable inferences from those facts must be resolved in the plaintiff's favor. *Pugh v. Tribune Co.*,

521 F.3d 686, 692 (7th Cir. 2008). However, plaintiffs may plead themselves out of court if the complaint includes allegations that show they cannot possibly be entitled to the relief sought. *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

*Analysis*

A federal court sitting in diversity must apply federal procedural law and the appropriate state substantive law. *First Nat. Bank and Trust Corp. v. Am. Eurocopter Corp.*, 378 F.3d 682, 689 (7th Cir. 2004). Here, it is undisputed that Indiana substantive law controls this dispute. To sustain a cause of action for fraudulent misrepresentation in Indiana, a plaintiff must allege:

> (1) that the defendant made false statements of past or existing material facts; (2) that the defendant made such statements knowing them to be false or recklessly without knowledge as to their truth or falsity; (3) that the defendant made the statements to induce the plaintiff to act upon them; (4) that the plaintiff justifiably relied and acted upon the statements; and (5) that the plaintiff suffered injury.

*Dickerson v. Strand*, 904 N.E.2d 711, 715 (Ind. Ct. App. 2009) (citing *Verrall v. Machura*, 810 N.E.2d 1159, 1162 (Ind. Ct. App. 2004). With regard to the false statements, "fraud may not be based on representations regarding future conduct, or on broken

promises, unfulfilled predictions or statements of existing intent which are not executed." *Biberstine v. New York Blower Co.*, 625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993). Moreover, when a plaintiff alleges both a breach of contract claim and a fraud claim, the tort of fraud must be "separate and independent" from the contract claim, and the injury sustained from the tort must be "distinct" from the injury suffered as a result of the breach of contract. *JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC*, 977 N.E.2d 354, 364 (Ind. Ct. App. 2012) (citing D*ean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010)).

An analysis of the factors above requires application of the procedural standards set forth in Federal Rule of Civil Procedure 9(b) to determine whether a claim for fraudulent misrepresentation has been properly stated. Rule 9(b) requires a plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted). Plaintiffs are required to plead the "who, what, where, and when of the alleged fraud" because, in doing so, they must "conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman*

*v. N.W. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Moreover, claims of fraud must sufficiently allege fraudulent intent on the part of the defendant. *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co. of Chicago*, 927 F.2d 988, 992 (7th Cir. 1991). As noted by the Seventh Circuit Court of Appeals:

> Cryptic statements suggesting fraud are not enough; mere allegations of fraud . . ., averments to conditions of mind, or references to plans and schemes are too conclusional to satisfy the particularity requirements. Rather, pleadings must state the specific content of the false representations as well as the identities of the parties to the misrepresentation."

*Id*. at 992-93 (internal citations, quotation marks, and brackets omitted).

Here, Crane 1 argues that Munster Steel failed to allege the elements of fraudulent misrepresentation with particularity, failed to properly allege that Crane 1 acted with fraudulent intent, and failed to properly allege a separate and independent tort for fraud with injuries distinct from those resulting from the breach of contract. Munster Steel responds by arguing that its claim is pled with sufficient particularity, that it is not based on future promises, and that it has properly alleged distinct contract and tort claims.

As to Rule 9(b)'s particularity requirement,[1] the "who" in this case is generally alleged to be representatives of Crane 1. While the specific identity of the Crane 1 employee or employees responsible for the fraud is not mentioned in the complaint, there is some precedent for the notion that the "institutional identity" will suffice at the motion to dismiss stage. See e.g. *MDG Intern., Inc. v. Australian Gold, Inc.*, No. 1:07CV1096-SEB-TAB, 2008 WL 3982072, at *3 (S.D. Ind. Aug. 22, 2008) (citing *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 574 (N.D. Ill. 1999)). Similarly, the "when" can be inferred to be sometime between November of 2011 (the time Munster Steel sold its old facility) and August of 2014 (the time the new facility was substantially completed) during which Munster Steel solicited and received the Proposal from and entered into the Agreement with Crane 1.[2]

However, the remaining elements are insufficiently pled. The complaint does not refer to "where" the alleged misrepresentations occurred. Munster Steel's old facility and new facility are mentioned, but not in connection with any specific

---

[1] Although the parties separate their arguments regarding "particularity" and "unfulfilled future promises," the analysis overlaps and will be addressed accordingly by the Court.

[2] Specifically, Munster Steel alleges that it solicited the Proposal from Crane 1 "prior to [the new facility's] completion" (DE #1, p. 3), that the Proposal was submitted on March 19, 2013 (*Id.*; see also DE #1-1), and that the Agreement was entered into on October 1, 2013 (DE #1, p. 4; see also DE #1-2).

representations. More importantly, Munster Steel fails to adequately allege "what" specific false statements of past or existing material facts Crane 1 purportedly made. In its response brief, Munster Steel argues that it has met the particularity requirements with regard to this issue because it "specifically alleged Crane 1 represented that it could provide Class D cranes to Munster Steel in its 2013 [P]roposal after it had visited Munster Steel's facility," that "Crane 1 made the representation knowing that Munster Steel would not enter the [A]greement without that representation," that "Crane 1 knowingly designed and constructed the cranes contrary to what it had represented," and that "despite the fact that Crane 1 knew the cranes were not Class D, it led Munster Steel to believe that it had provided Class D cranes." (DE #16, pp. 5-6.) However, as pointed out by Crane 1, the complaint itself only alleges that Crane 1 made representations as to *future* conduct and promises. For example, the complaint alleges that Crane 1 proposed to furnish, install and provide specific equipment to Munster Steel and that the Proposal articulated the details of how the cranes "*would be* designed and constructed." It alleges that Crane 1 knowingly represented that the cranes "*would meet* all the specifications and standards identified in the Proposal." These facts are distinguishable from those in *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare*

*Solutions LLC*, No. 1:13-CV-00133-RLY, 2014 WL 6750042 (S.D. Ind. Dec. 1, 2014), a case upon which Munster Steel relies heavily. In *Origin*, the false statements at issue included "affirmative misrepresentations" given by a sales representative during a business presentation that induced the plaintiffs to later enter into a contract to purchase software and related services. *Id*. at *1-4. Specifically, the plaintiffs alleged that they were "falsely assured" that the defendant "had installed dozens of these systems without error," that its sales representatives and support staff "had been extensively trained," and that the particular software package the plaintiffs were considering did not have any "glitches." *Id*. at *1. The district court found that the plaintiffs had adequately alleged a claim for fraud, in part, because the defendants had made the aforementioned "misleading representations regarding the characteristics and services associated with [the] software" prior to the signing of the contracts at issue. *Id*. at 3. The additional cases upon which Munster Steel relies are similarly distinguishable because, in each, the district court determined that false material representations as to past or existing facts had been adequately alleged. See *ABN Amro Mortg. Group, Inc. v. Maximum Mortg., Inc.*, 429 F. Supp. 2d 1031, 1039-41 (N.D. Ind. 2006) (finding the plaintiff had sufficiently pled a fraudulent mortgage scheme where

the "creation of the false appearance" was based on the allegation that the defendant had provided the plaintiff with false information on existing loan documents, had falsely represented that there were existing mortgages on the properties at issue, and had falsely represented to the plaintiff that he was entitled to a payoff on the existing mortgages); *DNET Services, LLC v. Digital Intelligence Sys. Corp.*, No. 1:08-CV-0252-DFH-JMS, 2009 WL 1259375, at *4 (S.D. Ind. May 5, 2009) (finding fraud was pled with particularity because the plaintiff had alleged "detailed certain written and oral communications" regarding representations that "may have concerned past or existing facts"). Here, however, Munster Steel has not alleged that Crane 1 made *any* representations as to its past or existing work, performance, expertise, skill, or any other material fact; rather all of the alleged misrepresentations concern what Crane 1 agreed it *would* do for Munster Steel.[3] This failure dooms its claim for fraudulent

---

3  Munster Steel points to the fact that Crane 1 submitted the Proposal after it had toured the old facility and had reviewed and observed Munster Steel's crane operations.  However, the complaint simply states that Munster Steel had invited Crane 1 to tour its facility "to gain an understanding of Munster Steel's operations," was provided an "extensive review" of the cranes being used, and that Crane 1 "took measurements and photos of the existing cranes to ensure the new cranes would be of like kind."  (DE #1, p. 3.)  It does not reference any discussions or representations made regarding Crane 1's past or existing crane projects or technical abilities.  Munster Steel also argues that its claim survives because it has alleged that Crane 1 did not provide as-built drawings or documentation of the cranes' specifications after their delivery as it had agreed to do; however, these allegations again concern unfulfilled promises rather than past or existing material misrepresentations.

misrepresentation because "[i]t is well-settled that fraud may not be premised upon "representations of future conduct, on broken promises, or on representations of existing intent that is not executed." See e.g. *Strodtman v. Integrity Builders, Inc.*, 668 N.E.2d 279, 283 (Ind. Ct. App. 1996) (finding that plaintiffs failed to allege a claim of fraud because any misrepresentations made in connection with the contract involved future conduct that the defendant had agreed, yet ultimately failed, to perform); *Biberstine*, 625 N.E.2d at 1315 (representations that the plaintiff would be allowed to keep his stock pertained to future conduct rather than past or existing facts); *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125 (Ind. Ct. App. 1992) (counterclaimants failed to allege actual fraud because counterdefendant's only representations involved future actions on which the counterclaimants had relied).

Because the Court has found that Munster Steel has failed to state a claim for fraudulent misrepresentation due to the lack of any allegation that Crane 1 made false statements of past or existing material facts, Crane 1's remaining arguments need not be addressed.

CONCLUSION

For the reasons set forth above, the motion to dismiss (DE #13) is **GRANTED**; however, Count V is dismissed **without prejudice**.

DATED: January 30, 2018          /s/ RUDY LOZANO, Judge
                                 **United States District Court**