# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MUNSTER STEEL CO., INC., <br>     Plaintiff, <br><br> v. <br><br> CRANE 1 SERVICES, INC., *et al.*, <br>     Defendants, <br>_____ <br><br> CRANE 1 SERVICES, INC., <br>     Third-Party Plaintiff, <br><br> v. <br><br> CINCINNATI CRANE & HOIST, LLC, <br>     Third-Party Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   CAUSE NO. 2:16-CV-345-TLS-JEM <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## OPINION AND ORDER

This matter is before the Court on Crane 1 Delaware Services, Inc.'s Motion to Quash Subpoena Issued to Kenneth Hessevick or Alternatively Modify the Subpoena to Protect Privileged Communications [DE 189], filed on September 19, 2019. Defendant Crane 1 Delaware seeks to quash a subpoena served by Plaintiff Munster Steel. Munster filed a response on October 4, 2019, and Crane 1 Delaware filed a reply on October 11, 2019. After the Court took the motion under advisement on October 24, 2019, Crane 1 Delaware filed a supplemental brief on November 4, 2019, and Munster filed a supplemental response on November 18, 2019.

### I.     Background

Munster sued Crane 1 Delaware after a related corporation, Crane 1 Ohio, allegedly failed to properly install and maintain cranes and related equipment at Munster's facility. On October 7, 2015, before this litigation began, Crane 1 Delaware purchased the assets of Crane 1 Ohio (now known as "RNM Holdings"). On the same day, Crane 1 Delaware entered into a "management

agreement" with non-party Pfingsten Partners LLC. Pfingsten is an investor in Crane 1 Delaware, through a complex legal structure involving six different corporations and limited liability companies. Under the management agreement, Crane 1 Delaware pays an annual fee to Pfingsten, and Pfingsten provides consulting and advisory services to Crane 1 Delaware. Pfingsten itself decides what topics it will advise on, as well as the "means and methods" by which it offers its advice. *See* Management Agreement at 1-2 [DE 206-1]. Crane 1 Delaware decides how and whether to implement the advice. *Id*. Pfingsten disclaims all liability for any of its work under the agreement, excluding "willful misconduct." *Id*. at 4.

According to Crane 1 Delaware, Pfingsten's services initially took the form of "business recommendations" provided by Kenneth Hessevick, a Pfingsten employee. Between October 7, 2015 and May 26, 2016, Hessevick provided recommendations relating to computer management, human resources, and other business operations. On May 26, 2016, according to Crane 1 Delaware, Hessevick first became aware of the dispute that led to this lawsuit. At that point, Hessevick began to advise Crane 1 Delaware on this dispute, coordinating fact gathering for the litigation and consulting on managerial and strategic decisions relating to the litigation.

Munster issued a subpoena to Hessevick, intending to depose him regarding the transaction between the Crane 1 entities, Crane 1 Delaware's interrogatory answers, and the work that Crane 1 Delaware did for Munster while Hessevick was consulting. Crane 1 Delaware now requests that the Court quash or modify the subpoena, arguing that Hessevick's communications with Crane 1 Delaware and its counsel are protected from disclosure as attorney-client communications because Pfingsten shares a common legal interest with Crane 1 Delaware.

**II.    Analysis**

Attorney-client privilege is generally waived if the information is disclosed to third parties. However, under the common interest doctrine, a communication between parties, or between one party and another party's lawyer, does not waive the privilege if it is part of "a joint effort with respect to a common legal interest." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). A "shared rooting interest" in the case based on a financial interest is not a legal interest. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014). Litigation does not need to be ongoing for the common interest doctrine to apply, and the parties do not all need to be involved in the litigation if it does occur. *BDO Seidman*, 492 F.3d at 815-16.

If the communications in this case are protected by the common interest doctrine, the Court must quash or modify the subpoena. Fed. R. Civ. P. 45(d)(3)(A) ("[T]he court . . . must quash or modify a subpoena that . . . requires a disclosure of privileged or other protected matter.").

Crane 1 Delaware argues that its relationship with Pfingsten creates a common legal interest between the parties. Munster does not dispute that Pfingsten and Crane 1 entered into a management agreement, but argues that Pfingsten's involvement with Crane 1 Delaware is ultimately "financially based," and that Pfingsten, which Munster characterizes as a private equity firm, has only a financial interest in Crane 1 Delaware's success in this litigation.

As an initial matter, Pfingsten and Crane 1 Delaware's management agreement alone does not establish a common legal interest. In *Dexia Credit Local v. Rogan*, 231 F.R.D. 287 (N.D. Ill. 2005), the court considered whether a hospital shared a common legal interest with several affiliated management companies. Pursuant to a management agreement with the hospital, the management companies had the authority to enter into contracts on the hospital's behalf, and were required to ensure that certain safety checks were performed and all necessary insurance coverage was secured.

3

231 F.R.D. at 290-91. The court found that the management companies and the hospital had a common legal interest, and therefore the hospital's communications with the management companies' lawyer were privileged, because of the companies' "fiduciary and other obligations" to the hospital under the management agreement. *Id.* at 294-95 (citing *United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997)). Unlike the agreement in *Dexia*, this agreement alone does not create obligations for Pfingsten that give it a common legal interest with Crane 1 Delaware. Pfingsten advises on whatever topics it wants, and Crane 1 Delaware has sole discretion on whether and how to implement the advice. Pfingsten has no decision-making power and disclaims all liability, so the agreement itself does not impose the kind of "fiduciary and other obligations" that create a common legal interest.

Apart from the management agreement, Crane 1 Delaware does not argue that Pfingsten was involved in this litigation prior to May 26, 2016, the day Hessevick claims he learned about the underlying dispute. Therefore, although the management agreement was in effect between October 7, 2015 and May 26, 2016, there was no "joint effort with respect to a common legal interest" during that time. *See Grochocinski v. Mayer Brown Rowe & Maw LLP,* 251 F.R.D. 316, 327 (N.D. Ill. 2008) (citing *Dexia*, 231 F.R.D. at 293-94) (holding that to establish a common legal interest, parties must demonstrate "actual cooperation" toward the common legal goal). Communications between Pfingsten and Crane 1 Delaware in that time period, before any common legal interest arose, are not privileged. *Evans*, 113 F.3d at 1467.

However, once Hessevick became involved with the instant dispute on May 26, Pfingsten and Crane 1 Delaware were clearly cooperating to defend against Munster's claims. Crane 1 Delaware argues that pursuant to the management agreement, Hessevick assisted and consulted on

4

this case in a significant capacity, because several senior Crane 1 Delaware officers left the company or were indisposed. The motion to quash describes "a joint effort . . . decided upon or undertaken" by Crane 1 Delaware and Pfingsten (via Hessevick) toward the common goal of defending against the legal claims. Although Pfingsten itself is not a party to this litigation, its participation in this "joint effort" gives it a common legal interest with Crane 1 Delaware. *See Terra Found. for Am. Art v. Solomol+Bauer+Giambastiani Architects, Inc.*, No. 14 C 3012, 2015 WL 1954459, at *5 (N.D. Ill. Apr. 29, 2015) (holding that a consultant shared a common legal interest with the company that hired it where it was "reasonable to assume" the consultant's work could be at issue in the litigation); *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 965 (N.D. Ill. 2010) (holding that the common interest privilege can extend to a party "even where it is not anticipated that the party will be sued") (citing *BDO Seidman*, 492 F.3d at 816, n. 6); *cf. Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732-33 (N.D. Ill. 2014) (finding no common legal interest between a litigant and the firms it contacted to help fund the litigation because the funders were not involved in planning or strategy); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 966 (N.D. Ill. 2009) (finding that the common interest privilege did not apply to a company's communications with an outside advertising firm in part because the advertiser did not have input into strategy) (citing *In Re Jenny Craig*, No. 9260, 1994 WL 16774903 (F.T.C. May 16, 1994)).

Because Pfingsten and Crane 1 Delaware had a common legal interest relating to this litigation when Hessevick became involved on May 26, 2016, the common interest doctrine applies from that date forward, and attorney-client privilege is not waived as to communications after that date. Hessevick will not be compelled to answer questions about events or communications occurring on or after May 26, 2016. However, Hessevick may be compelled to testify about events

and communications occurring before that date.[1]

**III. Conclusion**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Crane 1 Delaware Services, Inc.'s Motion to Quash Subpoena Issued to Kenneth Hessevick or Alternatively Modify the Subpoena to Protect Privileged Communications [DE 189], and **MODIFIES** the subpoena issued by Munster to Kenneth Hessevick in the manner described above.

SO ORDERED this 21st day of November, 2019.

                                                     s/ John E. Martin
                                                   MAGISTRATE JUDGE JOHN E. MARTIN
                                                   UNITED STATES DISTRICT COURT

cc:      All counsel of record

---

[1] Crane 1 Delaware argues that Hessevick cannot provide relevant testimony relating to events before May 26, 2016, because he was not aware of this pending litigation. However, given that Hessevick made "business recommendations" for Crane 1 Delaware between October 7, 2015 and May 26, 2016, while the construction dispute was ongoing, the Court does not find that Hessevick's testimony is necessarily irrelevant, and declines to further limit the subpoena on that basis.